IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBBIE L., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-24-1134-STE |
| | ) |
| FRANK BISIGNANO, Commissioner of | ) |
| The Social Security Administration, | ) |
| | ) |
|    Defendant.[1] | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

---

[1] Frank Bisignano became the Commissioner of Social Security Administration on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-37). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 4, 2022, the application date. (TR. 21). At step two, the ALJ determined Plaintiff suffered the following "severe" impairments: systemic lupus erythematosus (lupus), inflammatory arthritis, multilevel degenerative changes most notably C4-C7 where there is ventral cord compression without abnormal spinal cord signal, severe bilateral neural foraminal stenosis C4-C7, loss of the normal lordotic curvature of the cervical spine, degenerative changes with disc base collapse and anterior osteophytes at C4-5, C5-6, and C6-7, chronic pain syndrome, major depressive disorder, generalized anxiety disorder and post-traumatic stress disorder (PTSD). (TR. 21-22). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 22).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light exertion work as defined in 20 CFR 416.967(b) except the claimant can occasionally lift and carry twenty pounds; can frequently list and carry ten pounds; can sit continuously for three hours; can stand continuously for three hours; can walk continuously for three hours; can sit for a total of six hours in an eight-hour workday; can stand for a total of six hours in an eight-hour workday; can walk for a total of six hours in an eight-hour workday; can frequently handle, finger, feel, push, pull, and reach in all directions (including overhead reaching) bilaterally; can frequently operate foot controls bilaterally; can never climb a ladder or scaffold; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; can frequently tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations; and can tolerate exposure to loud (heavy traffic) noise. The claimant can understand, remember, and carry out simple and detailed tasks, but not complex tasks, and make occasional related judgements. The claimant can attend to and complete more than basic tasks, including tasks that require some skills and judgement, but do not require doing complex work duties. More specifically, the claimant cannot perform complex duties that involve in-depth multilayer decision-making or supervisory tasks, or perform tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of others, or fiduciary responsibilities. Within this context, the claimant has the concentration, persistence, and pace to focus for normal eight-[hour] workdays (with normal work breaks that occur about every two hours throughout normal eight-hour workdays) and normal forty-hour workweeks on an ongoing basis. The claimant can interact appropriately with co-workers and supervisors to learn tasks and accept criticism. The claimant can interact appropriately with the public on an occasional basis. The claimant can respond appropriately to usual work situations and to changes in a routine work setting. The claimant does not have any other physical or mental limitations or restrictions.

(TR. 25-26).

After making no finding on Plaintiff's past relevant work, the ALJ proceeded to step five of the sequential process and presented the RFC limitations to a vocational expert

(VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 73-75). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 76). At step five, the ALJ adopted the VE's testimony and concluded that Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 36-37).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ committed legal error by: (1) adopting the opinions of two State Agency psychologists and thereafter failing to include limitations found by them in the RFC and (2) failing to properly evaluate a medical opinion. (ECF No. 14:8-15).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.    NO ERROR IN THE RFC**

At step two, the ALJ determined that Plaintiff suffered from severe impairments involving major depressive disorder, generalized anxiety disorder and post-traumatic stress disorder (PTSD). (TR. 22). Thus, pursuant to the Social Security regulations, the ALJ was required to rate the degree of Plaintiff's functional limitations in four broad functional areas which included Plaintiff's abilities to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself—the so-called "B" criteria. 20 C.F.R. § 404.1520a(c)(3) & 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C). In each area, the possible ratings are none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(3). Ultimately, the ALJ determined that Plaintiff had a "moderate" limitation in her ability to concentrate, persist, or maintain pace, relying on the opinions of State Agency psychologists Lisa Swisher and William Farrell who made similar findings on April 19, 2022 and October 2, 2022, respectively. *See* TR. 25, 119 & 131.

In making their findings, Drs. Swisher and Farrell were asked to rate Plaintiff's limitations in eight sub-areas related to her ability to concentrate, persist, and pace. *See* TR. 123, 135. Each psychologist rated Plaintiff: (1) "not significantly limited" in seven of

the eight areas, including her ability to maintain attention and concentration for extended periods and (2) "moderately limited" in her ability to carry out detailed instructions. *See* TR. 123, 135. By way of explanation Drs. Swisher and Farrell stated:

> Clmt is able to concentrate and focus for two-hour periods with routine breaks, and pace and persist for 8 hour work day and 40 hour work week despite psychological symptoms. Due to periodic uncontrolled psychological symptoms, the clmt will have difficulty maintaining concentration for complex tasks and will experience some lapses on some tasks that require sustained attention.

(TR. 124, 135).

At step four, the ALJ concluded that Plaintiff could:

> attend to and complete more than basic tasks, including tasks that require some skills and judgement, but do not require doing complex work duties. More specifically, the claimant cannot perform complex duties that involve in-depth multilayer decision-making or supervisory tasks, or perform tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of others, or fiduciary responsibilities. Within this context, the claimant has the concentration, persistence, and pace to focus for normal eight-[hour] workdays (with normal work breaks that occur about every two hours throughout normal eight-hour workdays) and normal forty-hour workweeks on an ongoing basis.

(TR. 26).

Plaintiff takes issue with the aforementioned findings, arguing that the ALJ "omitted the portion of their limitations which concerned Plaintiff's 'lapses on some tasks that require sustained attention.' " (ECF No. 14:10). According to Plaintiff, "The ALJ provided no reasoning for rejecting this portion of these opinions despite accepting – almost verbatim – the remainder. This is curious as this limitation would directly impact Plaintiff's ability to maintain pace during the workday." (ECF No. 14:10). The Court rejects Plaintiff's argument.

Plaintiff correctly restates the findings from Drs. Swisher and Farrell regarding Plaintiff's "lapses on some tasks that require sustained attention." However, as stated, the only specific limitation that Drs. Swisher and Farrell found to be "moderate" in Plaintiff's ability to "concentrate, persist, and pace," was her ability to carry out detailed instructions. *See* TR. 123, 135. Both physicians found Plaintiff "not significantly limited" in her ability to maintain attention and concentration for extended periods. *See* TR. 123, 135. Thus, reading the findings in the context of the psychologists' narrative makes it clear that Plaintiff's "lapses on some tasks that require sustained attention" were part of the larger finding that Plaintiff would "have difficulty maintaining concentration for complex tasks." *See* TR. 124, 135. Thus, the RFC which found that Plaintiff "cannot perform complex duties that involve in-depth multilayer decision-making or supervisory tasks, or perform tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of others, or fiduciary responsibilities" necessarily encompassed the findings from Drs. Swisher and Farrell. The Court, therefore, rejects Plaintiff's argument and affirms the Commissioner on this issue.

## VI.    ERROR IN THE EVALUATION OF A MEDICAL OPINION

Plaintiff argues that the ALJ erred in his evaluation of a medical opinion from physician's assistant (PA) Jere Claunch. (ECF No. 14:12-15). The Court agrees.

### A.    The ALJ's Duty to Evaluate Medical Opinions

The Social Security regulations define a "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and

whether [a claimant] ha[s] one or more impairment-related limitations or restrictions" in her abilities to:

- Perform physical demands of work activities;
- Perform mental demands of work activities;
- Perform other demands of work, such as seeing, hearing, or using other senses; and
- Adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.1513(a)(2). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 416.913a(b)(2), 416.9520c. In doing so, the ALJ need only articulate how persuasive he finds the medical opinion. 20 C.F.R. § 416.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how she considered those factors. 20 C.F.R. § 416.920c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 416.920c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 416.920c(c)(2).

The regulations "do not prescribe the depth at which the ALJ must discuss" the supportability and consistency factors. *J. T. L. v. Kijakazi*, No. 22-cv-02343, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (citation and internal quotation marks omitted).

At minimum, the ALJ must provide "sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazier v. Kijakazi*, No. 20-1147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (explaining ALJ's reasoning must be free of "rote analysis and conclusory explanations") (quotations omitted). *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry on judicial review is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied"); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review.).

### B. Error in the ALJ's Evaluation of the Opinion from PA Claunch

On August 18, 2023, PA Claunch authored a "Medical Source Statement: Physical" for Plaintiff and opined that she suffered from depression, anxiety, chronic pain, hypertension, vascular disease and neck pain which would "constantly" interfere her ability to complete simple tasks. (TR. 1078). PA Claunch also found that Plaintiff's cognition was impaired and that the sum of her limitations would result in her being absent from work more than four times per month. (TR. 1079). The ALJ acknowledged the opinions from PA Claunch, but rejected them as unpersuasive, stating they "are generally inconsistent with the evidence; are generally unsupported by the evidence; and are less persuasive than the medical opinions by Dr. Ronald Painton, M.D., Dr. William Oehlert, M.D., and the Impartial Medical Expert, Dr. Steven Goldstein, M.D." (TR. 31).

Because the ALJ then provided detailed evaluations of opinions from Drs. Painton, Oehlert, Goldstein,[2] it could be argued that the ALJ effectively discharged his duty to provide a proper "consistency" analysis when evaluating the opinion from PA Claunch. However, the ALJ's findings are internally inconsistent, as PA Claunch bases his findings, in part, on Plaintiff's chronic pain and neck pain,[3] which the ALJ specifically credits when finding the opinions from Drs. Goldstein and Oehlert persuasive. *See* TR. 30-31. This inconsistency undermines the ALJ's consistency analysis of PA Claunch's opinion, and renders it lacking in substantial evidence.

Furthermore, although the ALJ found that PA Claunch's opinions were "generally unsupported by the evidence," the ALJ fails to provide any analysis in support of this statement which is required by the regulations. The Commissioner argues that the ALJ provided a proper supportability analysis by citing to "PA Claunch's normal mental status examination findings" on pages 30 and 31 of the transcript. (ECF No. 20:11). But "normal mental status examination findings" would not account for PA Claunch's findings that Plaintiff's cognition would be impaired due to opioid use and that the totality of her impairments, both physical and mental, would cause her to miss more than four days of work each month. As a result, the Court finds this explanation insufficient. *See Arteaga v. Kijakazi*, No. 1:21-cv-00530-JMR, 2023 WL 3613342, at *6 (D.N.M. May 24, 2023) (finding ALJ's supportability analysis which relied on "normal" mental status examinations

---

[2] *See* TR. 31-33.

[3] *See* 1078-1079.

deficient, stating: "Although there were certainly normal portions of the mental status examination, Dr. Martinez also found abnormal findings in the mental status examination pertaining to Ms. Arteaga's mood that supported her opinion that Ms. Arteaga's occupational function was 'greatly compromised' and that she was not 'capable of handling even the basic stressor[s] of life.' The ALJ offers no explanation of why he discounted *this part* of Dr. Martinez's opinion.") (internal citations omitted; emphasis added).

In sum, the Court concludes that the ALJ failed to properly evaluate the persuasiveness of PA Claunch's opinions in accordance with the dictates as set forth in the regulations and, on that basis, remand is warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 16, 2025.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE